May it please the court. Michelle Jacobs for the defendant Derrick Clark. The fundamental and critical errors in the count for jury instructions require that the defendant's convictions on that count be reversed. The government really has failed to substantively defend the instructions almost at all. Instead sort of falling back on preservation issues which of course I'm happy to address if the court is interested in going there. But I think the most important thing is to focus on what the instructions did not require the jury to find. And that is. Ms. Jacobs in the interest of time I'm going to jump in on for I understand you to be arguing that one of the problems with the instruction was it did not require the jury to find unanimously which of the three crimes the defendant was charged with and that it did not require the jury to find unanimously that they had agreed to commit a federal crime as opposed to something more amorphous. Are you also arguing that it failed to require the jury to find unanimously that the defendant agreed with another co-conspirator as to which of the crimes? Yes I mean I think these are all sort of the same different sides of the same coin. Because they seem different to me which is why I'm trying to parse out so precisely what your argument is because our case law clearly requires the jury to unanimously determine which of the three federal crimes a particular defendant engaged in under 371. Greg says that that is clear. To the extent that you are arguing that the law requires a unanimous determination that a particular defendant who you're considering agreed with a co-conspirator to commit the same crime. I'm not sure if you are if that's precisely what you're arguing or what law supports that. I'm not sure that that's any different. What we are arguing is that 371 requires an agreement between co-conspirators to commit a specified federal offense. And the instructions to start the instructions actually don't ever require that. There's nowhere in the instructions that the jury would have had to find unanimously or otherwise but would would have had to find an agreement between co-conspirators to commit one of those specified federal. What then do we make a special verdict for which checks all three for one or the other? What you should make of the special verdict, we need to look at the jury instructions to find out what the jury was told to do with that special verdict. And the instructions say and I quote, and it's two lines, the members of the jury did not need to agree to commit the same federal offense but for each charged defendant. So we're out of the agreement now. Now we're talking about individual defendants. You must unanimously agree that the defendant intended to commit at least one. You'll indicate on the verdict form which of the crimes you find that defendant to have intended. So the argument is daylight between the substantive count and the conspiracy count. That there was a possibility of, put the messenger to the side because there's a problem with that count seven. But you're indicating the way the instructions can be read would allow for a finding on the special verdict of 1001 violation without necessarily the conspiracy conclusion? Yes, absolutely. Because the instructions would allow for example, an agreement to commit this amorphous non-criminal object which is actually what the instructions say that there was a conspiracy related to concealing violations and unsafe conditions. So suppose that the jury found that Derek Clark agreed to conceal violations and unsafe conditions as the agreement for the conspiracy. Then the special verdict instructions, the instructions on the special verdict say if you, for each charged defendant, so for Derek Clark, you must unanimously agree that he intended to commit at least one of the offenses. So if he intended to commit 1001, but the agreement that the jury found was to conceal violations and unsafe conditions, then you have a fundamental defect in count four. You don't have an agreement on the specified criminal offenses. Is it your position then that all of the you just gave? Or would it be he just has to agree with one other co-conspirator to commit it? Yes, it's enough under 371, my understanding anyway, of the law of 371 is it's enough if the defendant that's under consideration agree with another co-conspirator to commit one of those specified federal offenses and the jury unanimously agree which of those specified federal offenses the conspirators agreed to. If the instruction had been different, if it had instead of using concealing violations in unsafe conditions, if it had included a federal crime there against the United States, would your argument be different? I think where it had, where the instruction had to be different is when it defines conspiracy. I think this court's jury instructions in 509, it defines conspiracy as an express or implied agreement between two or more persons to commit a crime. So it would have to have defined the conspiracy as that, to commit, and it's not just any crime in count, because it's count four it must be an express or implied agreement to commit 1001, 1519, or 1505. That's where you lose me, because the special verdict form checks all of those with respect to Clark and with respect to Messner checks two. If it had checked one for Clark but not the other two, and a different one for Messner, you could certainly see the argument that the jury hadn't found they agreed on an objective. But the jury seems to have found they agreed on at least two objectives. Not according to the jury instructions. What the jury instructions tell the jury is that the individual defendants, when they're checking boxes on that special verdict, what the instructions say is that members of the conspiracy did not need to agree to commit the same crime, but for each charge defendant, you have to unanimously agree that he intended to commit at least one. So let me give you another example. I don't think you're getting the burden of my observation that there was overlap in which crimes the jury checked for Clark and Messner, and since they checked two boxes in common for Clark and Messner, didn't the jury have to have agreed to commit those offenses? I don't think that they have to have found that the two of them together ever conspired to do that. No, I don't. And in fact, a really good example of that, Judge, is when they checked 1505. The basis for the 1505 offense was Mr. Clark's OSHA deposition, and I would challenge anyone in this room to find any evidence that Mr. Messner even knew about that deposition. That was the basis for the 1505, and there is not, I sat through that whole trial, there is not one piece of evidence that Mr. Messner ever even... That's a different point from whether the jury agreed on something. The jury certainly agreed on that. It checked the box. You have a Rule 29 argument, but it's different from the agreement argument. It is, but again, if you go back to what the jury was told to do with that special verdict, if a defendant, the jury was told it has to unanimously agree that the, in particular, a defendant intended to commit at least one of the three federal offenses. That alone sort of compounds the problem, because now you don't even know, did the jury unanimously agree on all, well, for example, on, if you had one juror agree on the 1505, that a defendant intended 1505, another juror agrees there were two, another juror agrees all three. As long as they unanimously agreed that at least one of the offenses the defendant intended, they would be But again, that doesn't get you to the agreement to commit the specified federal offense, and that is different. I mean, the means of committing a conspiracy, intending to... You check on the verdict from crimes you think the defendant to have intended, not that the defendant agreed with another, and for that reason... Our case law doesn't seem to clearly spell that out, and maybe it's an obvious point. Our case law talks a lot about unanimity as to a particular object for a particular defendant, but it doesn't really spot in the multi-object conspiracy that the pattern instructions don't address this particular point, and our case law doesn't either, but... But remember that the fundamental definition of, or the essence of a is the agreement to commit a crime, right? That's 371. It's a conspiracy to commit an offense against the United States, and it is sort of the example that's given in Griggs. If you have six jurors think that there was an agreement to commit 1001, and you have six jurors think that there was an agreement to commit 1505, you don't have a unanimous agreement on the offense itself, and for that reason, I would ask the court... I'm obviously out of time. I would ask the court to vacate the convictions on count four, and for the reasons obviously that we set out in our brief, to vacate the remainder of Mr. Clark's convictions. Thank you, Ms. Jacobs. Mr. Moyers. Good morning, and may it please the court. Sean Mesner's in prison for two conspiracy convictions, and he shouldn't be. He shouldn't be there because neither conviction is valid. I'm going to start with the count one charge. Here, Mr. Mesner should never have even gone to trial. He's not going to go to trial on that. It should have been dismissed, and it should have been dismissed because it doesn't plead a scheme to defraud. Why doesn't it show a scheme to defraud? Because Didion's deceiving its customers about sanitation practices. That's just economically valuable information. It's not a traditional property. I rely on Ciminelli here, but Ciminelli is really different. That involved a right to control theory, and that was the only theory that was alleged, and the Supreme Court found that you couldn't proceed on that. That couldn't be the object of the fraud conspiracy. You're arguing something different here. It seems to be that you're arguing that because the customers didn't suffer an actual financial loss that it can't be charged as a conspiracy. Yeah, I think that's right, and I think the reasoning underneath Ciminelli, if you just take the... How do you get around... If that is your argument, and that's what I understood your argument to be, how do you get around our opinion in Keller Chain, which says that you can charge a conspiracy even though you didn't actually suffer financial loss? Well, I think there are some different regulatory concerns, and I would... But that's the... A regulatory concern isn't the issue. That doesn't impact... The actual financial loss is the issue, and in Keller Chain, we said it doesn't matter for purposes of charging the fraud conspiracy. Is your argument that Ciminelli has implicitly overruled that, and if not, how do you distinguish... I think they're very hard... Yeah, I mean, I think that they're very hard to... I think they're very hard to square, and what I would point out is with Ciminelli, what it shows with regard to Keller Chain, or Kalerchian, I don't know the pronunciation, is that it can't be fraud if you bring somebody exactly what they bargained for, and it can be dishonest. It could be maybe even criminal under some other federal provision, but... But you'd have to... To apply to the facts here, you'd have to say you didn't bring somebody what they bargained for financially, because there's plenty of evidence that the safety precautions were important to the customers. The non-financial aspects were important to them. They testified to that. And I guess... I got two points on that. The first is that I don't think the tipping point is just for an alleged victim to come in and say that they were... That it was important to them, or that it was meaningful to them. The way that you show that is through a contract, and you would have somebody come in from procurement or contract... Why is that the only way it can be shown? Well, maybe I shouldn't have said the only way. It would be the primary way I would expect in a commercial relationship, right? If you want to know what's important among the parties, it's not what they... If you want to know what's important to the parties, you might ask them. Yeah. Think of a bank fraud prosecution where the borrower lies about his assets, right? And says, well, yeah, but I'm going to pay the bank back. They won't lose anything. And the bank says, yeah, what we lost was the ability to make an intelligent decision about whether to lend to you, right? You don't have to show that the bank wasn't repaid. You just show a material falsehood. Yes. And I can think of lots of ways of showing that a falsehood was material. I guess I got two answers to that, which is I have to acknowledge, yes, that the bank fraud statutes and the federal property fraud statutes, they're seen as... They're often interpreted the same way. And courts look at them that way, right? Second of all, I think when you want to get... If you're looking at materiality, sure, you can have a customer come in and talk about it. But we're talking here about we have somebody from General Mills, somebody from Anheuser-Busch that come in. And of course, they're safety inspectors. They're auditors. Of course, they're going to say their job's important or that it's material. That's a line of cross-examination. It's not a demonstration that the evidence is legally insufficient. And that, well, I think my understanding then of your point is for it to be properly alleged, they just have to say, my understanding is what you're saying is that it has to be material and that they have to... And that the way that they have to show that is having somebody from the customer show come in and explain. But you're going back to the way they have to show that is. Yeah. There are lots of ways to show things. You seem to be saying our favorite way of showing something is X, in your case, a contract. And no other way is legally permissible. That's what I'm wondering how one could say that. Well, I know how you can say that. You aren't saying that. But I wonder how that can be true. And I think what I would say, at least with regard to the pleading problem, it has to show, okay, if it's not financial, if there isn't a law... It's not a pleading problem. You don't plead evidence in an indictment or a civil complaint. All right. Well, then, yeah, I think I would have to concede, yes, there are different ways to plead it or there are different ways to prove it. And it doesn't have to just be through a contract. You could have anybody come in. But here, I don't think it's certainly not sufficient if they're going to show, if they're trying to show what the relationship is between them and whether it mattered or not. There's much discussion about Simonelli-Ciminelli. The Supreme Court this week heard this case, Cusasus, on the property element of wire fraud. Is that closer or farther from your case in the law? I think what it shows is that our case is pretty much already resolved by Simonelli. What I gathered from the Cassisi-Sorrell argument that I heard, that I listened to Monday, is that what their Supreme Court is trying to figure out now is that they're beyond us. They're a fraud with, in this case, it was a diversity business program. If there's fraud around that, but the government gets exactly what it bargained for in terms of a painted bridge. And I think if that's what they're arguing about now, if that's sort of the frontier of where it is, here, our case would certainly, the conviction certainly couldn't stand because there's no, there's not even an issue here of whether the party got what it wanted. Well, here, wouldn't the concealed information, though, expose the customers to greater financial risk? I mean, I guess you could say that in a really, it's kind of attenuated way. You could also say that they didn't want to know because it would, they just want the cheapest grain and that's what matters to them. But we don't know because we don't really know, for instance, how much grain they bought, how much milk product, what did they pay for it? Why does that matter? Because that's how you would measure at least whether this was a provision that was material, that they really cared about. But that wasn't the theory of materiality. You're arguing restitution issues now. The theory of, that was not the government's theory of materiality at the trial. No, I think what they, the government's point, as best as I can understand it, was, look, this mattered because it was the customer's money and that's the property interest here that was harmed. And there was a deception that led to Didion's getting money and even though the customer's got exactly what they wanted. I have a question on Count 4. I want to make sure I understand your argument on the Count 4 conviction, the 1001A3 object. You have challenged that based on sufficiency of the evidence. Mm-hmm. Is that your argument or are you challenging it based on the lack of an instruction on Count 7, which is what the 1001 corresponds to? I think the best way to put it is that we don't disclaim the argument. And if you want to find that there's a sufficiency problem, that'd be delightful. You, I'm trying to figure out what you're arguing because you phrased it as a sufficiency. Yes. But reading it, it does not look like a sufficiency argument to me. It looks like a jury instruction argument that they weren't properly instructed on Count 7. Well, yeah, that is the primary argument. I think where the court really goes off the rails here is the Count 4 instruction. And the sufficiency point just shows, I don't want to call it secondary, but there I said it, is that it shows, look, if you want to bless this jury instruction, you run into serious sufficiency problems because Mr. Messner just didn't do, and there just wasn't any evidence of the theories of, I guess, the conspiracy theories under Count 4. And Count 7 was dismissed. Yes. I think I have a minute left, but thank you. Thank you, Mr. Moyers. Ms. Collier. Good morning, Your Honors, and may it please the court, Amy Collier on behalf of the United States. I'd like to start with Messner's arguments just because that's where we left off. I'll start with the Count 1 fraud conviction and then move quickly through that Count 4 question as well. So pushing back a little bit on what Messner has said in his argument here today, I would just like to emphasize, as we did in our brief, that the government introduced extensive evidence about how it was important, it was vital to Didion's customers, that they were buying product that was produced in a facility that followed the requirement that Didion had a certified food safety certification, and also through the fact that they did their own audits. They employed their own auditors to go to this plant to review the sanitation logbook, to review the cleaning schedule, to make sure that the facility was adhering to its stated sanitation program. And Messner knew this. Messner knew that these audits were of the, quote, utmost importance to the customers. That's in one of the emails he sent to other employees telling them to bring the logbook up to date and falsify entries. He knew this throughout the entire operation. And so to say here today that it's unclear whether this was important to the customers or not, I think we have very, very clear evidence from both the General Mills representative and the Anheuser-Busch representative that this was important. They believed they were buying product produced at a certified food safe facility. That's not what they were getting. They were getting product that was produced at a facility that was fraudulently deceiving its customers through the falsification of the logbook. Just to put a finer point on the Koussissis case that Judge Brennan asked about, I think that that case raises serious questions, but ones that are quite different from the case we have here. The petitioners in that case present it solely as a fraudulent inducement theory. And as the jury instructions show here, this jury was instructed that a victim is not defrauded if it gets exactly what it bargains and pays for, even if there is some fraud that leads to the transaction. The fraud must go to the object of the deal itself. So that was what the jury was told, and I submit that the evidence strongly supports that here. I also listened to the Koussissis argument on Monday. And just to sort of emphasize how narrowly the petitioners in that case are presenting it, they were asked whether if someone's contracting for a certified plumber and instead they're provided a handyman, but the job is done just as they requested, would that be fraud under your theory? And they agreed that that was different, that that would be fraud under their theory, and that was different from the case that they were presenting to the court that day. So I don't think that that really touches on the issue here, where we do have some clear evidence that this was the heart of the transaction between Didion and its customers, and that this fraud was really consistent with all of the precedent we cite in our brief from this circuit and the Supreme Court on a quintessential fraud. To the point about Simonelli, I agree that it is a very narrow decision. In that case, the Supreme Court was addressing this right to control theory of fraud that really was only embraced by the Second Circuit at that point, and explaining that the object of the conspiracy must be money or property, it can't be this amorphous rights to information. But even if you just look at the opinion itself, you can tell that the Supreme Court recognized that that right to control theory was different from this traditional property interest theory of fraud. The government submitted that the court could affirm on this other theory, and while the court recognized that that was a different theory, it declined to do so. Justice Alito's concurrence in that case specifically says, we're not ruling on the ability of the government to retry these same defendants for the same scheme under a traditional theory of fraud. So I don't think that Simonelli forecloses any of the fraud that was pursued here. If we could turn to count four, please. Yes, count four. And before we get into the 1001 argument that Mr. Mesner's counsel raised, the special verdict form marked both 1001, which corresponds to count seven, and the 1505 as to Mr. Mesner. You didn't respond to the argument about a lack of evidence on the 1505. That's with respect to Mr. Clark's deposition. To agree the record does not support, beyond a reasonable doubt, a conviction for agreeing to participate in this obstruction of the agency under 1505 as to Mr. Mesner. So the government's position is that there may not be enough evidence there, there doesn't need to be. Because in a conspiracy like this, if there is sufficient evidence to prove that the defendant conspired to commit one of the object. I agree. So there's still 1001, which may have some issues. I just want to clarify, if that were the only box marked, do you agree you wouldn't have sufficient evidence to sustain this conviction? I agree that the government is not pursuing that theory. But I'll take that as a yes. For the 1001 theory. I took Mr. Mesner here today, Mr. Mesner's counsel here today, to be saying that they're not disclaiming an argument about the jury instructions. But my understanding in their reply brief is they very clearly said, this is not a jury instruction problem. This is a problem about the sufficiency of the evidence. I think that was a little bit of a moving target, which is why I asked. But Ms. Collier, the 1001 as to Mr. Mesner corresponds to count seven. Correct? The instructions do not specify that it is. I mean, yes, the underlying activity. The government dismissed count seven as a substantive count right before it went to the jury. Correct. I didn't see anywhere where the jury was instructed specifically on count seven, given, obviously, that the substantive count was dismissed. How does that impact the finding on count four, where they found him guilty of conspiring to engage in count seven? Certainly, Your Honor. And setting aside whether Mr. Mesner has preserved any challenge to the jury instructions, I would like to just emphasize that throughout trial, in the indictment itself, throughout the government's case, in closing, the focus of the 1001A3 object offense and count four conspiracy for Mr. Mesner went specifically to the OSHA documentation. That's in the indictment itself. OSHA was identified as a federal agency. The logbooks were identified as documents within its jurisdiction at trial. The instructions for count four don't specify that 1001, that 1001 object of the conspiracy has to go to EPA or OSHA. It just specifies that that's one of the object conspiracies of the conspiracies. And then the instructions for count six provide sort of the elements of that crime in the EPA context, but still provide the jury with the elements of that underlying offense. So I don't think, you know, and the standard for reviewing jury instructions is whether the jury was so misled that it would be confused about what the charges were, what its verdict should be based on. I don't think there's any risk here that the jury was confused. But the sanitation... You have to rely on the 1001 elements in count six, even though that's a different crime charge. That's what your response is. Well, of course, for the conspiracy charge, the government doesn't need to prove that all of those elements were established. Correct. And the... Instructions on the conspiracy specific, they have to agree that they agree to engage that this is one of the objects. And the instructions given to the jury tell them for these three crimes, the instructions are set out below in counts five through nine. But of course, there is no instruction as to count seven. Yes, Your Honor. But count seven would have had the same elements that were presented in count six. I would also... If I remember correctly, the instructions for count four, you know, don't just say that one of the objects... They don't just identify the statutes by number. They give sort of a brief explanation of what each of those offenses were. And so that's in the count four instruction itself. And so the fact that the elements are set forth in count six, providing those same elements for that underlying offense. Again, I don't think the jury was misled that that had to be an EPA document when all of the evidence presented at trial and the indictment itself specifically links that count to the OSHA documentation. And if there are no other questions on Mesner's arguments, I'll turn to Clark's. Can we stick with count four? I will stick with count four, yes. In the instruction there, what is the government's position as to whether or not the jury has to unanimously agree that a defendant agreed with a co-conspirator as to which of these three objects to commit? I think that the jury does have to unanimously agree that a defendant conspired with somebody else to commit these crimes. I think that... And do they have to agree conspired as to commit a particular crime? Yeah, I do think that is spelled out in the instructions in the verdict form. The verdict form itself says, you know, may the jury find this defendant guilty of the offenses charged in count four, and having found them guilty, further find that the defendant conspired to commit the following offense or offenses. So again, the jury was told what the definition of conspiracy is and told specifically to determine which of those offenses the jury conspired to commit. So again, I think the verdict form, you know, and the jury instructions as a whole really don't amount to anything that would so mislead the jury that it would be confused about its task there. Again, the... What about the aspect of the instruction that says the members of the conspiracy did not have to agree to commit the same federal offense? And I think that that is consistent with this court's law for these multi-object conspiracies, these big conspiracies. You know, it comes up in drug conspiracy contexts as well, that not all of the conspirators have to agree to commit all of the same offenses. I don't think there was any dispute at trial and in the charge conferences about that point. I think all of the defendants were in agreement that that was a correct statement of the law. And so I don't think there's anything particularly wrong with saying that they don't all have to agree to commit the same offense. I do take your point that it's a little confusing what's being pressed here with the instructions. But again, I think the court's task is to take a step back and look at the instructions as a whole. Look at the fact that the jury was told that count four was a conspiracy to commit three federal offenses. And that the fact that there was this sort of identification of this overarching unlawful goal of the conspiracy does not mean that the jury was not properly instructed about what a conspiracy charge entails. And if there are no other questions on count four, with the other issues raised by Clark, we would rest on our briefs unless there are any further questions. All right. Thank you very much, counsel. The case is taken under review.